**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FIRST GUARANTY BANK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3497** |
| **BANCINSURE, INC.** | **SECTION B(5)** |

**ORDER AND REASONS**

Before the Court is Defendant BancInsure, Inc.'s ("BancInsure") Motion For Summary Judgment.  (Rec. Doc. No. 15). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

*BACKGROUND*

Plaintiff First Guaranty Bank ("First Guaranty") sustained financial loss as a result of an alleged mortgage loan scheme involving Jamy Kiger[1] ("Kiger"), Pat Graves[2] ("Graves"), land developers, mortgage brokers and appraisers. Plaintiff filed the instant lawsuit to recover said loss under a Financial Institution Bond issued by Defendant BancInsure.

---

[1]Jamy Kiger was employed by First Guaranty as a loan originator .

[2]Pat Graves was employed by First Guaranty as a loan officer.

1

The alleged mortgage loan scheme involved land developers who promoted an investment scheme wherein investors could potentially earn up to forty thousand dollars ($40,000.00).  The investment scheme allowed investors to purchase lots for new home construction with no money down and no payments.  Investors were allegedly assured that the properties would be appraised substantially higher than the loan amount and that the newly constructed homes would be sold for a profit.  Investors were required to fill out loan applications and to sign purchase agreements, construction management contracts, and closing documents.

Plaintiff alleges Kiger, Graves, developers, mortgage brokers and appraisers acted in collusion to fraudulently secure approximately 179 loans in excess of twenty-six million (26,000,000.00) dollars for said investors by routinely misstating the purpose of the loan, inflating appraisal amounts, and inflating the stated income and financial assets of the investors/borrowers.

On June 23, 2005, First Guaranty advised BancInsure of a potential claim arising out of the alleged mortgage loan scheme. First Guaranty conducted an investigation and advised BancInsure of a claim seeking payment of the Financial Institution Bond three million (3,000,000.00) dollar policy limit on February 23, 2006. On April 4, 2006, BancInsure responded to First Guaranty's claim requesting a sworn proof of loss pursuant to Section 5(b) of the

Financial Institution Bond and declining to render a decision on coverage.

Plaintiff contends Insuring Agreements (A), (D)(2), and/or (Q) of the Financial Institution Bond issued by BancInsure covers losses arising out of the alleged mortgage loan scheme. Plaintiff further contends BancInsure acted in bad faith and is liable to First Guaranty for statutory penalties in accordance with La. Rev. Stat. 22:1220.

Defendant contends First Guaranty's loss is not covered by the Financial Institution Bond. First, Defendant claims Insuring Agreement (A) does not afford coverage because Kiger and Graves did not receive improper financial benefit. Second, Defendant claims Exclusion (h) precludes coverage under Insuring Agreements (D)(2) and/or (Q). Defendant further contends First Guaranty is not entitled to statutory penalties under La. Rev. Stat. 22:1220 because First Guaranty failed to provide BancInsure with a sworn proof of loss. Therefore, BancInsure moves the Court for summary judgment.

### *DISCUSSION*

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

### 1.    Financial Institution Bond

Plaintiff contends Insuring Agreements (A), (D)(2), and/or (Q) of the Financial Institution Bond afford coverage for financial losses sustained as a result of the alleged mortgage loan scheme.

#### a. Insuring Agreement (A)

Insuring Agreement (A) indemnifies the Insured for:

> Loss resulting directly from dishonest or
> fraudulent acts committed by an Employee

acting alone or in collusion with others.

Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent;

    (a)  to cause the Insured to sustain such a loss, or

    (b)  to obtain improper financial benefit for the Employee or another person or entity.

However, if some or all of the Insured's loss results directly or indirectly from Loans, that portion of the loss is not covered unless the Employee was in collusion with one or more parties to the transactions and has received, in connection with these transactions, an improper financial benefit.

As used throughout this insuring Agreement, financial benefit does not include any employee benefits earned in the normal course of employment, including salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

BancInsure contends coverage does not exist under Insuring Agreement (A) because neither Kiger nor Graves received an improper financial benefit in connection with the alleged mortgage loan scheme. However, Plaintiff alleges Kiger received an improper financial benefit when she received a free personal appraisal from an appraiser allegedly involved in the mortgage loan scheme. Therefore, a genuine issue of material fact exists as to whether Kiger received an improper financial benefit in connection with the mortgage loan scheme.

**IT IS ORDERED** that Defendant's motion for summary judgment as

to Plaintiff's claim for coverage under Insuring Agreement (A) of

the Financial Institution Bond is **DENIED**.

      **b.**    **Insuring Agreements (D)(2), and/or (Q)**

    Insuring Agreement (D)(2) provides for:

> Loss resulting directly from:
> (2)  transferring, paying or delivering any
> funds or Property or establishing any
> credit or giving any value on the faith
> of any written instructions or advices
> directed to the Insured and authorizing
> or acknowledging the transfer, payment,
> delivery or receipt of funds or Property,
> which instructions or advices either bear
> a signature which is a forgery or have
> been altered without the knowledge and
> consent of such customer or financial
> institution. . . .

    Insuring Agreement (Q) provides for:

> Loss resulting directly from the Insured's
> having, in good faith and in the ordinary
> course of business in connection with any
> loan, accepted or received or acted upon the
> faith of any real property mortgages, real
> property deeds of trust or like instruments
> pertaining to realty or assignments of such
> mortgages, deeds of trust or instruments which
> prove to have been defective by reason of the
> signature on such document of any person
> having been obtained through trick, artifice,
> fraud, duress or false pretenses . . .

    Notwithstanding whether the alleged mortgage loan scheme

invokes  Insuring Agreements D(2) and/or Q, coverage under said

insuring agreements is precluded by Exclusion (h) which states:

> This bond does not cover
> (h)  loss caused by an Employee, except when
> covered under Insuring Agreement (A) . .

.

Plaintiff specifically alleges:

> [B]ut for the dishonest acts of Kiger and Graves . . . most, if not all of the . . . [l]oans would not have been made by [First Guaranty]. . . . As a direct result of the dishonest actions and/or forgeries of its employees, Graves and Kiger, [First Guaranty] loaned in excess of Twenty-Six Million ($26,000,000.00) Dollars. . . .[First Guaranty] avers it has incurred losses as a direct result of the dishonesty and forgeries of Kiger and Graves . . . .[3]

Exclusion (h) precludes loss caused by an employee.  Here, Plaintiff alleges loss sustained as a result of the dishonest acts of its employees, Kiger and Graves.  Therefore, Exclusion (h) is applicable and precludes coverage under Insuring Agreements D(2) and/or Q.

**IT IS ORDERED** that Defendant's motion for summary judgment as to Plaintiff's claim for coverage under Insuring Agreements D(2) and/or Q of the Financial Institution Bond is **GRANTED**.

**2.   Bad Faith**

First Guaranty contends BancInsure's actions are arbitrary and capricious and, therefore, claims BancInsure is liable to First Guaranty for its bad faith conduct pursuant to La. Rev. Stat. 22:1220.  La. Rev. Stat. 22:1220 provides in pertinent part:

---

[3]Complaint, ¶¶ XV, XVI, and XVIII.

>       (A)   An insurer . . . owes to his insured a
>             duty of good faith and fair dealing.  The
>             insurer has an affirmative duty to adjust
>             claims fairly and to make reasonable
>             effort to settle claims with the insured
>             or claimant, or both.  Any insurer who
>             breaches these duties shall be liable for
>             any damages sustained as a result of the
>             breach.
>       (B)   Any one of the following acts, if
>             knowingly committed or performed by an
>             insurer, constitutes a breach of the
>             insurer's duties imposed in Subsection A:
>             . . .
>             (5)  Failing to pay the amount of any
>                  claim due any person insured by the
>                  contract within sixty days after
>                  receipt of satisfactory proof of
>                  loss from the claimant when such
>                  failure is arbitrary, capricious, or
>                  without probable cause.

"An insured's burden under this statute is great and sanctions should be imposed against the insurer only 'where the facts negate probable cause for nonpayment,' and plaintiff proves the 'insurer's actions or failure to act were unjustifiable." *Delahoussaye v. Madere*, 733 So.2d 679, 688-89 (5th Cir. 1999)(citation omitted). To prevail on a claim for penalties under La. Rev. Stat. 22:1220, the insured must establish that: (1) the insurer received satisfactory proof of loss; (2) the insurer failed to pay the claim; and (3) the insurer's "failure to timely tender a reasonable amount was arbitrary and capricious." *Sterling v. U.S. Agencies Cas. Co., Inc.*, 818 So.2d 1053, 1057 (La.App. 4 Cir. 5/15/02)(citing *Khaled v. Windham*, 657 So.2d 672, 679 (La.App. 1 Cir. 6/23/95).

First, the Court must determine whether BancInsure received satisfactory proof of loss.  Plaintiff advised BancInsure upon discovering the alleged mortgage loan scheme and further advised BancInsure of Plaintiff's claim seeking payment of the Financial Institution Bond three million (3,000,000.00) dollar  limit. However, Plaintiff did not file a sworn proof of loss pursuant to Section 5(b) of the Financial Institution Bond.   Furthermore, Plaintiff represents that the amount of loss remains to be determined.[4]   Therefore, the Court finds Plaintiff failed to establish that BancInsure received satisfactory proof of loss.

Second, Plaintiff must establish that BancInsure failed to pay the claim.  BancInsure has not paid Plaintiff's claim.[5]

Third, Plaintiff must establish that BancInsure's failure to tender a reasonable amount was not arbitrary and capricious. Considering BancInsure's documented position requiring sworn proof of loss for claim processing[6] and further considering the amount of Plaintiff's loss remains to be determined, the Court finds Plaintiff failed to establish that BancInsure's actions were

---

[4]*Memorandum In Opposition to BancInsure's Motion For Summary Judgment* (Rec. Doc. No. 24), p.30.

[5]BancInsure has not refused payment and requests sworn proof of loss in further consideration of the claim. *Complaint*, Exhibit E.

[6]*Id.* See also *Affidavit Of Don Pratt In Support Of Defendant BancInsure, Inc.'s Motion For Summary Judgment*, Exhibit C, ¶ 6.

arbitrary and capricious lacking probable cause.

Finding BancInsure's conduct was not in bad faith,

**IT IS ORDERED** that Defendant's motion for summary judgment as to Plaintiff's bad faith claims pursuant to La. Rev. Stat. 22:1220 is **GRANTED**.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for coverage under Insuring Agreements D(2) and/or Q of the Financial Institution Bond and Plaintiff's bad faith claims under La. Rev. Stat. 22:1220 and **DENIED** as to Plaintiff's claim for coverage under Insuring Agreement (A) of the Financial Institution Bond.

New Orleans, Louisiana this 23rd day of April, 2007.

_____
UNITED STATES DISTRICT JUDGE